DAVID ALBERS *et al.*, Indiv. and as Parents and Next Friends of Shea Albers, a Minor, Plaintiffs-Appellants, v. MELISSA BREEN *et al.*, Defendants-Appellees.

Fourth District   No. 4—03—0640

Argued November 12, 2003.—Opinion filed March 2, 2004.

800

Glenn A. Stanko (argued), of Rawles, O'Byrne, Stanko & Kepley, P.C., of Champaign, for appellants.

Karen L. Kendall and Brad A. Elward (argued), both of Heyl, Royster, Voelker & Allen, of Peoria, and Elaine Massock, of Heyl, Royster, Voelker & Allen, of Urbana, for appellees Melissa Breen and Rural Champaign County Special Education Cooperative.

John F. Martin, of Meachum & Martin, of Danville, for other appellees.

JUSTICE COOK delivered the opinion of the court:

Plaintiffs, David and Christine Albers, individually and on behalf of their son Shea Albers, filed a two-count complaint against defendants Melissa Breen, the Rural Champaign Special Education Cooperative (Cooperative), Steven Fink, and the Board of Education of Gifford Community Consolidated Grade School District No. 188 (Board) for alleged violations of the Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act) (740 ILCS 110/1 through 17 (West 2002)). Defendants filed motions to dismiss, and the circuit court dismissed the entire complaint with prejudice. We affirm.

According to the complaint, in early 2002 Shea Albers was in the seventh grade at Gifford Grade School. Sometime before February 25, 2002, three male students bullied him (the complaint does not say how). On February 25, Christine, Shea's mother, complained about the bullying to defendant Steven Fink, who was the principal of the school and superintendent of the school district. Christine did not tell Fink the names of the three bullies.

Because the bullying made Shea reluctant to go to school, Christine called the school on February 27, seeking the assistance of a social worker to counsel her son. Melissa Breen, an employee of defendant Cooperative, worked as a social worker providing services to the students at Gifford Grade School. Responding to Christine's call, Breen contacted her and made arrangements to counsel Shea.

Christine told Breen that Fink wanted to know the names of the three bullies but that Shea did not wish to reveal them. Based on Breen's representation that she would not share their names with Fink, Christine told Breen who the three boys were.

Later that day, Breen met with Shea. She promised him that nobody would find out that he had revealed the names of the boys. Nevertheless, without authorization, Breen later told Fink their names. On or about March 6, 2002, Fink revealed to one of the three bullies that Shea had complained about him. Because of these disclosures by Breen and then Fink, the complaint alleges, Shea suffered emotional distress. This in turn required private counseling, and Shea was also forced to attend a different school the following year.

Count I of the complaint alleged that Breen's disclosure of the bullies' names to Fink and his subsequent disclosure to one of the bullies violated the Confidentiality Act. Count II sought damages under the Rights of Married Persons Act, sometimes referred to as the Family Expense Act (750 ILCS 65/15 (West 2002)), for the expenses of private counseling, tuition, and travel, allegedly resulting from Breen's and Fink's disclosures. The alleged liabilities of the Cooperative and the Board derive respectively from Breen's and Fink's disclosures.

Breen and the Cooperative filed a motion to dismiss under sections 2—615 (735 ILCS 5/2—615 (West 2002)) and 2—619 (735 ILCS 5/2—619 (West 2002)) of the Code of Civil Procedure (Procedure Code). They argued that they were protected from suit under the Confidentiality Act (740 ILCS 110/11(ii) (West 2002)), the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2—201 (West 2002)), and the School Code (105 ILCS 5/24—24 (West 2002)).

Along with the section 2—619 motion, they submitted an affidavit from Breen. In the affidavit, Breen stated that she was a licensed school social worker and the only social worker at the school district. She reported to assistant principal Linda Hicks and to Fink. On or about February 27, 2002, Christine told her that Shea was being bullied and was depressed, and she asked Breen to speak to him. Breen told Christine that she would not tell the boys that Shea had identified them. She met with Shea that day for approximately 10 minutes. The affidavit stated further that Breen ordinarily does not counsel a student on the first meeting and did not consider this to be counseling. At this meeting, Shea told her he had been shoved and kicked.

Based on speaking with Christine and with Shea, Breen "assessed that Shea was at risk of further immediate, serious, and ongoing harm." She therefore told Fink about the bullying. She also told him that she had promised Shea that she would not tell the boys that Shea had identified them. She never did tell the boys this information.

Fink and the Board also filed a section 2—619 motion to dismiss, raising defenses under the Confidentiality Act, the Tort Immunity Act, and the School Code. These defendants submitted an affidavit from Fink, in which he stated that when he spoke to Christine on February 25, she did not know the names of the bullies but said she would get them. When he and Breen later met with two of the bullies on March 6 and one of them denied the bullying allegations, Fink told them that it involved Shea Albers. Both boys were given detentions, and on March 12, Fink gave the third boy a detention. Fink also stated in the affidavit that when he mentioned Shea to the boys, he believed it was necessary to protect Shea from physical and mental injury.

Plaintiffs responded by moving to strike several parts of Breen's and Fink's affidavits, largely on the ground that the affidavits were an attempt to negate essential allegations of the complaint. In support, they included an affidavit from Christine, in which she stated that she had attempted to get private counseling for Shea, but because she could not get an appointment for several weeks she had arranged to have Breen counsel him in the interim. She also stated that when she picked up Shea from school on March 6, he was upset because two of the bullies had been given detention. Christine immediately talked to Fink, who admitted he had disclosed Shea's identity to the boys. On March 8, she talked to Breen about why she and Fink had handled the situation as they had; Breen responded that she had attended a February 28 workshop on bullying, where she had learned that schools should take aggressive action when dealing with bullying. Christine's affidavit further stated that Fink was on vacation from February 27 to March 5 and that Breen told him about the bullying as soon as he returned.

The trial court heard arguments concerning the motions to dismiss and dismissed both counts of the complaint with prejudice. In doing so, the court also denied plaintiffs' motions to strike portions of the affidavits. The court ruled that Breen and the Cooperative were immune from suit under the Confidentiality Act (740 ILCS 110/11(ii) (West 2002)) and Fink and the Board under the Tort Immunity Act (745 ILCS 10/2—201 (West 2002)). It did not reach whether the School Code applied and did not explicitly rule on whether Breen was also protected by the Tort Immunity Act. The court denied Breen's motion to dismiss under section 2—615 of the Procedure Code. Plaintiffs now appeal the dismissal of the complaint as to both sets of defendants.

■ We review *de novo* the granting of a motion for involuntary dismissal under section 2—619 of the Procedure Code. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116, 619 N.E.2d 732, 735 (1993). In considering such a motion, the court takes all well-

pleaded facts in the complaint as true and draws all reasonable inferences from those facts in favor of plaintiff. *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 325, 659 N.E.2d 1322, 1329 (1995).

■ Under section 2—619, a defendant may raise "affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 2002). This affirmative matter may not negate the essential allegations of the plaintiff's cause of action (*Rogalla v. Christie Clinic, P.C.*, 341 Ill. App. 3d 410, 422, 794 N.E.2d 384, 395 (2003)) but may include defenses such as immunity (*Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 479, 763 N.E.2d 756, 759 (2002)).

■ The Confidentiality Act is implicated whenever a "communication" is made to a "therapist," as those words are defined in the Confidentiality Act. A "therapist" includes a "social worker *** providing mental health or developmental disabilities services," which "includes but is not limited to examination, diagnosis, evaluation," and other services. 740 ILCS 110/2 (West 2002). The person receiving these services is termed a "recipient," and the communications protected by the Confidentiality Act are those made by either the recipient or by another person if made in connection with the provision of services. 740 ILCS 110/2 (West 2002).

When a recipient or other person communicates something to a therapist, that communication must thereafter be kept confidential, except where the Confidentiality Act specifically allows disclosure. 740 ILCS 110/3(a) (West 2002). The specific exception at issue in this case is found in section 11, which reads in part as follows:

"Records and communications may be disclosed:
        ***

    (ii) when, and to the extent, a therapist, in his or her sole discretion, determines that disclosure is necessary to *** protect the recipient or other person against a clear, imminent risk of serious physical or mental injury or disease or death being inflicted upon the recipient or by the recipient on himself or another[.]" 740 ILCS 110/11 (West 2002).

Under section 11, the good faith of a therapist who discloses information "shall be presumed." 740 ILCS 110/11 (West 2002).

Before considering whether Breen was protected by this provision, we address what plaintiffs perceive as a defect in her motion to dismiss. In the circuit court, Breen argued that the Confidentiality Act should not apply to her because she is not a therapist as the Confidentiality Act uses that term. In her motion to dismiss, however, she simply asserted that even if she does fit the Confidentiality Act's definition, she is protected by section 11. Plaintiffs insist that Breen

may not claim this protection while at the same time stating in her affidavit that she did not believe her meeting with Shea should be called counseling. Plaintiffs cite *Smith v. Ashley*, 29 Ill. App. 3d 932, 935, 332 N.E.2d 32, 34 (1975), for the proposition that a party may not use an affidavit to contradict unequivocal statements made in a deposition.

■ While we have no objection to that rule, we disagree that it applies to this case. Breen's affidavit contains allegations that are arguably inconsistent with the factual basis for plaintiffs' case, but Breen certainly has not directly contradicted herself under oath. In any case, Breen's motion to dismiss does not argue that she is not a therapist; rather, it properly assumes for the purpose of the motion that she is a therapist and asserts that she is entitled to an exemption from liability applicable to therapists. Plaintiffs have not convinced us that this is anything but an ordinary use of a motion to dismiss.

Turning to the substance of Breen's defense, we conclude that the trial court correctly found that she was protected under section 11. The statute leaves it in the therapist's "sole discretion" to decide whether disclosing otherwise-protected information is necessary to protect the recipient of services from harm and requires us to presume that she made the determination in good faith. 740 ILCS 110/11 (West 2002). According to Breen's affidavit, Shea told her he was being "shoved and kicked" by the other boys; and as a result, she believed he was at risk of further harm. She therefore informed Fink about the bullying. Nothing in the record contradicts these assertions, and they place Breen's conduct within the protection of section 11. Christine's own affidavit actually reinforces Breen's conclusion; in it, she stated that Shea told her "he would rather be dead than go to school" because of the bullying. Although inconclusive, this statement suggests that Shea thought he might suffer harm from returning to school.

Plaintiffs argue that they have at least raised a question of material fact as to whether section 11 applies. Such a question would preclude dismissal. See *Cunningham v. Huffman*, 223 Ill. App. 3d 878, 886, 585 N.E.2d 1140, 1145 (1992) (motion may be granted only if there is no issue of material fact). Plaintiffs argue that the record does not establish the details of who bullied Shea, when they did it, how, or to what extent. Unfortunately, this argument is addressed to the wrong question: the precise nature of the clear, imminent risk of serious harm to Shea or another person. Although such detail is no doubt useful to a therapist in deciding whether she should disclose confidential information, we are aware of no requirement that she know every detail before making that decision.

Plaintiffs also argue that there is a question of fact as to whether Breen disclosed the bullies' names in good faith. Although good faith

is presumed under the statute (740 ILCS 110/11 (West 2002)), that presumption may in some instances be overcome. *Poulos v. Lutheran Social Services of Illinois, Inc.*, 312 Ill. App. 3d 731, 744, 728 N.E.2d 547, 559 (2000). Plaintiffs assert that because Breen told Christine she would not disclose the names of the bullies, her later disclosure was made in bad faith. We disagree. Even if Breen misled Christine, as we must assume in evaluating the motion to dismiss, this has little bearing on whether she believed that reporting to Fink was necessary for Shea's protection. The good faith presumed by the statute must refer not to plaintiffs' general notions of fairness but to the reasons underlying a therapist's disclosure of information.

We conclude that the trial court correctly granted Breen and the Cooperative's motion to dismiss based on section 11 of the Confidentiality Act. We therefore do not address arguments concerning the Tort Immunity Act or the School Code as they pertain to these two defendants.

■ We now turn to the Tort Immunity Act, however, because it was the basis on which the trial court granted Fink and the Board's motion to dismiss. Section 2—201 provides as follows:

"Except as otherwise provided by [s]tatute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2—201 (West 2002).

This section immunizes public employees from liability where the injury claimed is the result of a "discretionary policy determination." *Courson v. Danville School District No. 118*, 333 Ill. App. 3d 86, 88, 775 N.E.2d 1022, 1024 (2002). Because governmental immunity is an affirmative defense, the defendant bears the burden of properly proving that the immunity applies to defeat the plaintiff's claim. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 370, 799 N.E.2d 273, 280 (2003). The defense must be apparent on the face of the complaint or else supported by affidavits or other evidentiary materials. *Van Meter*, 207 Ill. 2d at 377, 799 N.E.2d at 284.

■ Before proceeding further, we must address plaintiffs' argument that this immunity provision does not apply to our case because it is trumped by the Confidentiality Act. Quoting the words "[e]xcept as otherwise provided by [s]tatute," plaintiffs contend that Fink is not protected by the Tort Immunity Act because the Confidentiality Act has "otherwise provided." See 745 ILCS 10/2—201 (West 2002). Accepting this argument would mean that public employees could never be immune under section 2—201 from a statutory cause of action, un-

less the statute specifically stated that it did not override section 2—201. That cannot be right. Plaintiffs' reading would turn section 2—201 from a generally applicable immunity provision into one that applied only if the General Assembly remembered to reincorporate it into each new statute establishing a cause of action. We decline to adopt plaintiffs' interpretation of section 2—201.

■ Plaintiffs also argue that the Tort Immunity Act is not applicable because the Confidentiality Act has its own more specific immunity provisions. They cite *Brock v. Anderson Road Ass'n*, 287 Ill. App. 3d 16, 22, 677 N.E.2d 985, 990 (1997) (Second District), which held that the most specific and recently enacted of three different immunity provisions applied to emergency medical technicians who had treated a patient. Plaintiffs believe that because section 11 of the Confidentiality Act provides a form of immunity to that act's liability provisions, it should displace the Tort Immunity Act in this case.

We are not persuaded by this argument. The court in *Brock* apparently believed that two different immunity provisions could not apply to the same defendants and that it was forced to choose. *Brock*, 287 Ill. App. 3d at 23, 677 N.E.2d at 990. The supreme court's decision in *Arteman*, 198 Ill. 2d 475, 763 N.E.2d 756, makes clear that this was incorrect. In *Arteman*, the court held that section 2—201 of the Tort Immunity Act gave immunity to a school district even though it may have breached a duty to the plaintiff under the School Code. *Arteman*, 198 Ill. 2d at 487, 763 N.E.2d at 764. This was so even though the School Code itself provides immunity to educators for negligence in situations involving discipline. 105 ILCS 5/24—24 (West 2002); *Arteman*, 198 Ill. 2d at 480, 763 N.E.2d at 760. In other words, the immunity provision in the School Code did not displace the immunity provided by the Tort Immunity Act. We conclude that the Tort Immunity Act is similarly available in this case, despite the existence of an immunity provision in the Confidentiality Act.

■ *Arteman* made another point that is relevant in our case by emphasizing that the existence of a duty and the existence of an immunity are separate questions. *Arteman*, 198 Ill. 2d at 487, 763 N.E.2d at 764. This means that it is entirely possible for a public defendant to owe a plaintiff a duty and yet be immune from suit. Whereas plaintiffs here believe that if the Confidentiality Act applies to Fink he cannot be immune, they are conflating two very different questions. Whether or not he violated the Confidentiality Act, it is possible that the Tort Immunity Act prevents plaintiffs from suing him.

Having established that the Confidentiality Act does not shove aside section 2—201 of the Tort Immunity Act, we must decide whether section 2—201 applies to Fink. The provision requires an

inquiry into both the public employee's position and the nature of the action challenged in a lawsuit. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 341, 692 N.E.2d 1177, 1181 (1998). For section 2—201 to apply, the employee's position may involve either formulating policy or exercising discretion; the particular act or omission challenged must be *both* a determination of policy and an exercise of discretion. *Harinek*, 181 Ill. 2d at 341, 692 N.E.2d at 1181.

■ Policy decisions are those that require the public entity or employee to " 'balance competing interests and to make a judgment call as to what solution will best serve each of those interests.' " *Harinek*, 181 Ill. 2d at 342, 692 N.E.2d at 1181, quoting *West v. Kirkham*, 147 Ill. 2d 1, 11, 588 N.E.2d 1104, 1109 (1992). We have little doubt that Fink's actions here constituted a policy determination as the cases have defined it. A school principal dealing with a disciplinary matter must balance competing interests—the confidentiality of his information source, the appropriate level of punishment, the concerns of all the children's parents, the impact of his decision on the student body generally—and make a judgment as to what balance to strike among them. See *Harinek*, 181 Ill. 2d at 342, 692 N.E.2d at 1182; see also *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 474, 758 N.E.2d 848, 852 (2001) (principal's decision not to allow a student to leave early to avoid oncoming storm is a policy decision). Fink's action was therefore a policy decision, but was it discretionary?

An act or omission is discretionary when it is "unique to a particular public office." *Snyder v. Curran Township*, 167 Ill. 2d 466, 474, 657 N.E.2d 988, 993 (1995). Discretionary acts are defined partly by their contrast with ministerial acts, "which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Snyder*, 167 Ill. 2d at 474, 657 N.E.2d at 993. While the outer limits of the definition of "discretionary" are murky, it encompasses a wide range of governmental behavior. See, *e.g.*, *Arteman*, 198 Ill. 2d at 487, 763 N.E.2d at 764 (holding that school district decision not to provide roller-blade safety equipment was discretionary and acknowledging that a decision not to provide helmets to a school football team would be as well); *Harrison*, 197 Ill. 2d at 474, 758 N.E.2d at 852 (principal's refusal to let student leave school early). Certainly the way that a principal handles an instance of bullying in his school falls within the definition; any student who has been sent to the principal's office could attest that he has broad discretion in how to handle such situations. Plaintiff Christine recognized the uniqueness of the principal's function when

her first response to Shea's bullying problem was to report it to Fink. Breen, too, reported the allegations to Fink when she decided that something needed to be done to protect Shea.

██ We conclude that Fink's decision about how best to handle Shea's allegations of bullying constituted a discretionary policy decision. Fink is thus immune under section 2—201 of the Tort Immunity Act and would be even if his disclosure of Shea's name to the other children constituted an abuse of his discretion. 745 ILCS 10/2—201 (West 2002). Because Fink is immune, the Board is as well. 745 ILCS 10/2—109 (West 2002).

For the foregoing reasons, we affirm the circuit court's judgment.

Affirmed.

KNECHT, P.J., and TURNER, J., concur.