MARY LOUISE JACKSON, Adm'x of the Estate of Exavier Lee Jackson, Deceased, Plaintiff-Appellant, v. ARACOLI ALVEREZ, Indiv., *et al.*, Defendants-Appellees.

Fourth District No. 4—04—0238

Argued February 23, 2005.—Opinion filed June 10, 2005.—Rehearing denied August 1, 2005.

APPLETON, J., concurring in part and dissenting in part.

Karen E. Wall (argued), of Spiros & Wall, P.C., of Danville, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Nadine J. Wichern and Brett E. Legner (argued), Assistant Attorneys General, of counsel), for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

Decedent, Exavier Lee Jackson, was 16 years old and a resident of Lincoln Developmental Center (a State of Illinois facility) when he died in July 2001. In August 2002, Exavier's grandmother, plaintiff Mary Louise Jackson, as administratrix of Exavier's estate, sued two employees of the Center, defendants Aracoli Alverez and Carolyn Goforth, for negligently causing Exavier's death. In March 2004, the trial court entered an order dismissing the complaint against both defendants on the grounds of sovereign immunity and public-official immunity. The court also specified that the complaint as to Alverez was dismissed "with prejudice."

Plaintiff appeals, arguing that the trial court erred by finding that sovereign immunity and public-official immunity bar her claims against Goforth and Alverez.

Because the trial court dismissed the counts against Goforth without prejudice, we lack subject-matter jurisdiction to review the dismissal of those counts. We affirm the court's dismissal of the counts against Alverez.

# I. BACKGROUND

In plaintiff's August 2002 complaint, which contained multiple counts against both Goforth and Alverez, she alleged the following. Exavier was "an inpatient under 'total supervision' at the Center, a state mental-health facility." He had been diagnosed with "profound mental retardation and [i]mpulse[-][c]ontrol [d]isorder." The Center had rules requiring employees to keep all personal items locked up and to bring into the facility no greater amount of medication than the employee needed to take during a shift. Goforth and Alverez were supposed to "monitor and document" Exavier's activity every 15 minutes and keep him in close proximity. On July 21, 2001, in violation of those workplace rules, Goforth brought into the Center more than 100 Darvocet pills in her purse and left the purse unsecured. Goforth and Alverez failed to check on Exavier every 15 minutes and keep him in close proximity, and, while unsupervised, he got the Darvocet pills from Goforth's purse and swallowed a lethal amount.

In June 2003, Goforth filed a motion to dismiss the counts against her, pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2002)), invoking sovereign immunity and public-official immunity. Goforth accompanied the motion with a memorandum of law in support thereof. In October 2003, plaintiff filed her response to that motion and attached her own memorandum of law.

Following a December 2003 hearing, the trial court granted Goforth's motion to dismiss. As of that ruling, Alverez had not yet filed an answer or appeared in the case.

On January 6, 2004, plaintiff filed three motions: (1) a motion asking the trial court to reconsider the dismissal of the counts against Goforth or, in the alternative, enter a finding under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), so that she could appeal the dismissal of those counts; (2) a motion for a default judgment against Alverez; and (3) a motion for leave to file an amended complaint, adding allegations of professional negligence against both Goforth and Alverez. In the proposed amended complaint, plaintiff alleged, for the first time, that (1) both Goforth and Alverez were "duly licensed and certified nursing assistant[s]" and (2) by failing to properly supervise Exavier, they "failed to exercise that degree of skill and care that ordinarily well qualified and certified nursing assistants possess and exercise under similar circumstances in [the] locality or similar localities in which the *** treatment was rendered." Plaintiff served a notice of hearing upon Goforth and Alverez, announcing that on February 2, 2004, there would be a hearing on her three pending motions.

On January 30, 2004, Alverez appeared and filed a motion to dismiss based on the same grounds as Goforth. Both Goforth and Alverez filed memoranda opposing the motion to amend the complaint, arguing that (1) plaintiff failed to attach an affidavit in support of the professional-negligence allegations, as required by section 2—622 of the Code (735 ILCS 5/2—622 (West 2002)); (2) the statute of limitations on plaintiff's claims expired in July 2003 and the proposed new allegations of professional negligence did not relate back to plaintiff's timely filed allegations (see 735 ILCS 5/2—616 (West 2002)); and (3) Illinois law does not recognize a cause of action for professional negligence based on supervision.

On February 2, 2004, the trial court held a hearing, which it described in its docket entry for that day as a "[h]earing held on [m]otion to [r]econsider." At the hearing's conclusion, the court noted that the pleadings Goforth and Alverez had filed on January 30, 2004, had not yet been entered in the court file. Accordingly, the court took the case under advisement so that it could consider those pleadings as well as the arguments of counsel it had just heard. Significantly, the transcript of that hearing reveals that neither the court nor either counsel ever mentioned plaintiff's motion for leave to file an amended complaint.

On March 15, 2004, the trial court entered a written order providing as follows:

"1. That the prior ruling of this court to dismiss the causes of action against [Goforth] will stand.

2. That the cause of action previously filed herein against [Alverez] is hereby dismissed with prejudice on the basis of public[-] official immunity and sovereign immunity.

3. Therefore, there is no just reason to delay enforcement of the [o]rder herein or appeal of these [o]rders pursuant to Supreme Court Rule 304(a)."

The court's order did not address plaintiff's motion for leave to file an amended complaint.

This appeal followed.

## II. ANALYSIS

### A. Appellate Jurisdiction

■ This court has a duty to assess our subject-matter jurisdiction, regardless of whether the parties question it. *In re Marriage of Betts*, 159 Ill. App. 3d 327, 330, 511 N.E.2d 732, 734 (1987). For the following reasons, we conclude that we lack jurisdiction to review that portion of the trial court's March 15, 2004, order dismissing the counts against Goforth.

Although the trial court dismissed the counts against Goforth, an order dismissing counts against a defendant is not final for purposes of appeal unless the order states that the litigation against that defendant is ended and the plaintiff may not replead. See *Smith v. Central Illinois Regional Airport*, 207 Ill. 2d 578, 587, 802 N.E.2d 250, 256 (2003); *Cole v. Hoogendoorn, Talbot, Davids, Godfrey & Milligan*, 325 Ill. App. 3d 1152, 1153, 759 N.E.2d 110, 112 (2001). Not even the addition of a Rule 304(a) finding will make the mere dismissal of counts against a defendant appealable. *Cole*, 325 Ill. App. 3d at 1156, 759 N.E.2d at 114. A Rule 304(a) finding presupposes "a final judgment as to one or more but fewer than all of the parties or claims." 155 Ill. 2d R. 304(a). One cannot transform a nonfinal order into a final order by calling it final. *Cole*, 325 Ill. App. 3d at 1156, 759 N.E.2d at 114.

In its March 15, 2004, order, the trial court entered a Rule 304(a) finding and dismissed the counts against Alverez "with prejudice." Because "with prejudice" meant that the court would not allow plaintiff to replead against Alverez (see *O'Hara v. State Farm Mutual Automobile Insurance Co.*, 137 Ill. App. 3d 131, 133, 484 N.E.2d 834, 836 (1985)), the dismissal of the counts against her was final (see *Smith*, 207 Ill. 2d at 588, 802 N.E.2d at 256) and—given the Rule 304(a) finding—appealable. Although plaintiff had moved for a Rule 304(a) finding to enable her to appeal the dismissal of the counts against Goforth, not Alverez, a court may enter a Rule 304(a) finding *sua sponte* (155 Ill. 2d R. 304(a)) and, therefore, is not limited by the motion for such a finding. The court found no just reason to delay the appeal of "these *orders*"—meaning the earlier dismissal of the counts against Goforth (which was, nevertheless, not appealable) as well as the dismissal of the counts against Alverez (which, by virtue of the Rule 304(a) finding, was appealable). (Emphasis added.)

## B. Sovereign Immunity

### 1. *Formal Designation of Defendants Not Dispositive*

■ Sovereign immunity is a common-law doctrine that bars lawsuits against the government unless the government consents to be sued. *City of Shelbyville v. Shelbyville Restorium, Inc.*, 96 Ill. 2d 457, 461, 451 N.E.2d 874, 876 (1983). Article XIII, section 4, of the Illinois Constitution abolishes sovereign immunity except as the General Assembly provides by law. Ill. Const. 1970, art. XIII, § 4. The General Assembly reinstated sovereign immunity in the Court of Claims Act (705 ILCS 505/1 through 29 (West 2002)). Section 8(d) of the Act provides as follows: "The [C]ourt [of Claims] shall have exclusive jurisdiction to hear and determine *** [a]ll claims against the [s]tate

for damages in cases sounding in tort \*\*\*." 705 ILCS 505/8(d) (West 2002).

As a practical matter, the state acts only through its employees. Therefore, a judgment against an employee in his or her individual capacity could effectively coerce the state and frustrate the purpose of sovereign immunity, which is to prevent litigants from controlling the government. See *Shelbyville Restorium*, 96 Ill. 2d at 461, 451 N.E.2d at 876. Having incurred liability once for a job-related decision and being subject to collateral estoppel, the governmental official might take that liability into account when making future job-related decisions. See *People ex rel. Maciuba v. Cheston*, 25 Ill. App. 3d 224, 226, 323 N.E.2d 40, 42 (1974). Public-official immunity protects state employees from such coercion, but that immunity belongs to the employee and is limited to discretionary decisions; the state has its own immunity. *Lusietto v. Kingan*, 107 Ill. App. 2d 239, 244, 246 N.E.2d 24, 27 (1969). To enforce sovereign immunity, courts have held that its applicability depends not on the formal designation of the defendants but on the nature of the state employee's conduct and the relief the plaintiff seeks (*Hoffman v. Yack*, 57 Ill. App. 3d 744, 748, 373 N.E.2d 486, 490 (1978); *Maciuba*, 25 Ill. App. 3d at 226, 323 N.E.2d at 41) or, as the supreme court has put it, "the issues involved and the relief sought" (*Healy v. Vaupel*, 133 Ill. 2d 295, 308, 549 N.E.2d 1240, 1247 (1990)).

In *Robb v. Sutton*, 147 Ill. App. 3d 710, 716, 498 N.E.2d 267, 272 (1986), we amplified the "issues" into three criteria:

"[W]e believe that where, as here, there are (1) no allegations that an agent or employee of the [s]tate acted beyond the scope of his authority through wrongful acts [(scope of authority)]; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of [s]tate employment [(source of duty)]; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the [s]tate, then the cause of action is only nominally against the employee. As such, the claim involves actions which may be attributed to the [s]tate."

The Supreme Court of Illinois has adopted these three criteria (*Jinkins v. Lee*, 209 Ill. 2d 320, 330, 807 N.E.2d 411, 418 (2004)), which overlap to some extent, especially the first and third criteria. All three criteria must be present for sovereign immunity to apply. *Janes v. Albergo*, 254 Ill. App. 3d 951, 958, 626 N.E.2d 1127, 1132 (1993). If these three criteria are not met, a court must consider the relief sought—that is, whether " 'a judgment for the plaintiff could operate to control the actions of the [s]tate or subject it to liability.' " (Emphasis omitted.) *Jinkins*, 209 Ill. 2d at 330, 807 N.E.2d at 418, quoting *Currie v. Lao*, 148 Ill. 2d 151, 158, 592 N.E.2d 977, 980 (1992).

## 2. *Sovereign-Immunity Criteria*

### a. Scope of Authority

■ Plaintiff argues that Alverez committed her wrongful acts or omissions outside the scope of her authority as a state employee because she willfully and wantonly violated the Center's rules. We disagree.

Obviously, no state employee has authority to commit a tort. *Hopkins v. Clemson Agricultural College of South Carolina*, 221 U.S. 636, 643, 55 L. Ed. 890, 894, 31 S. Ct. 654, 656 (1911). However, if one could defeat sovereign immunity by simple reference to a tort, there would be no such thing as sovereign immunity to tort actions. *Management Ass'n of Illinois, Inc. v. Board of Regents of Northern Illinois University*, 248 Ill. App. 3d 599, 616, 618 N.E.2d 694, 705 (1993). On its face, section 8(d) of the Act does not distinguish between tort claims premised on negligence and those premised on willful and wanton misconduct. See 705 ILCS 505/8(d) (West 2002); *Rembis v. Board of Trustees of the University of Illinois*, 249 Ill. App. 3d 1, 4, 618 N.E.2d 797, 799 (1993).

Because sovereign immunity presupposes the possibility of a legal wrong by a state employee (*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 693, 93 L. Ed. 1628, 1637-38, 69 S. Ct. 1457, 1463 (1949)), and legal wrongs are, *per se*, unauthorized, the relevant question cannot be whether the employee had authority to commit the legal wrong. Instead, the question is whether the employee intended to perform some function within the scope of his or her authority when committing the legal wrong. See *Campbell v. White*, 207 Ill. App. 3d 541, 552, 566 N.E.2d 47, 54 (1991); *Postich v. Henrichs*, 267 Ill. App. 3d 236, 241, 641 N.E.2d 975, 979 (1994); *Janes*, 254 Ill. App. 3d at 959, 626 N.E.2d at 1132. By breaking workplace rules or performing their duties with willful and wanton indifference, employees do not necessarily act outside the scope of their state employment. *Campbell*, 207 Ill. App. 3d at 551, 566 N.E.2d at 53; *Welch v. Illinois Supreme Court*, 322 Ill. App. 3d 345, 353, 751 N.E.2d 1187, 1194 (2001); *Janes*, 254 Ill. App. 3d at 959, 626 N.E.2d at 1132.

In her original complaint, plaintiff alleged that it was Alverez's job to supervise Exavier. We must take that allegation to be true. See *Albers v. Breen*, 346 Ill. App. 3d 799, 803-04, 806 N.E.2d 667, 671 (2004). Viewed under the foregoing authority, Alverez's supervision of patients, even if grossly careless, still falls within the scope of her authority as an employee of the Center. See *Janes*, 254 Ill. App. 3d at 959, 626 N.E.2d at 1132. Thus, the first criterion for sovereign immunity exists.

Moreover, because the complained-of actions involve matters ordinarily within Alverez's duties as a state employee, the third criterion for sovereign immunity also exists. See *Robb*, 147 Ill. App. 3d at 716, 498 N.E.2d at 272.

### b. Source of Duty

Plaintiff next argues that sovereign immunity does not attach to Alverez because the source of Alverez's duty to Exavier was her status as a mental-health worker, not her status as a state employee. We disagree.

Sovereign immunity does not automatically attach as a result of a defendant's state employment. When a state employee is charged with breaching a duty imposed on her independently of her state employment, sovereign immunity will not attach, and a negligence claim may be maintained against her. *Jinkins*, 209 Ill. 2d at 333-34, 807 N.E.2d at 420. The independent source of duty cannot be the general common-law duty of reasonable care that everyone owes but must be a set of particular professional standards that one is expected to observe as a member of that profession. See *Jinkins*, 209 Ill. 2d at 334-35, 807 N.E.2d at 420-21.

Resolving all reasonable inferences in plaintiff's favor (see *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 184, 680 N.E.2d 265, 268 (1997)), we must determine whether she has pleaded a source of duty independent of Alvarez's state employment. Although Mary Louise argues on appeal that Alverez's duty arose out of her status as a mental-health worker, she never alleged in her original complaint that Alverez was a member of a particular profession to which a set of professional standards applied. Nor did she allege that Alverez's duty arose from any source other than her state employment. Thus, the second criterion for sovereign immunity exists.

Accordingly, because all three criteria for sovereign immunity exist, we conclude that the trial court did not err by dismissing Mary Louise's original complaint against Alverez on the ground of sovereign immunity.

### c. Plaintiff's Motion To File an Amended Complaint

■ The dissent addresses sovereign immunity by looking to plaintiff's proposed amended complaint. Specifically, it concludes that plaintiff sufficiently alleged that Alverez, as a certified nursing assistant, owed Exavier a duty arising from a set of standards independent of her employment at the Center. We limited our sovereign-immunity analysis to plaintiff's original complaint because, as discussed below, she abandoned her motion for leave to file an amended complaint.

In her brief, Alverez succinctly describes the history of plaintiff's motion for leave to file an amended complaint as follows:

"Though [plaintiff] filed a motion for leave to file an amended complaint in the circuit court, the motion was never ruled on ***, so the amended complaint was never filed and never became the operative complaint. [Plaintiff] never argued that the motion should be granted at the February 2, 2004[,] hearing; instead, she merely argued that the claims against Goforth in the original complaint should not have been dismissed and that the claims in the original complaint again[st] Alverez should not be dismissed. *** And, on appeal, [plaintiff] herself relies on the original complaint as the operative complaint in her statement of facts. *** [Plaintiff] does not argue on appeal that her motion for leave to amend should have been granted by the circuit court. *** Nor could she make such an argument because she abandoned the motion by filing a notice of appeal before ensuring that the motion was ruled on by the circuit court."

In her reply brief, plaintiff does not dispute Alverez's description of the proceedings regarding her motion for leave to file an amended complaint. Moreover, the record supports that description.

In *Prather v. McGrady*, 261 Ill. App. 3d 880, 885, 634 N.E.2d 299, 302-03 (1994), this court discussed abandonment of motions as follows:

"The party filing a motion has the responsibility to bring it to the trial court's attention. [Citation.] Unless a motion is brought to the attention of the trial judge and the judge is requested to rule on it, the motion is not effectively made. [Citation.] Unless it appears otherwise, where no ruling appears to have been made on a motion, the presumption is that the motion was waived or abandoned."

See also *Muirfield Village-Vernon Hills, LLC v. K. Reinke, Jr., & Co.*, 349 Ill. App. 3d 178, 187, 810 N.E.2d 235, 243 (2004) ("The party filing a motion has the responsibility to bring it to the trial court's attention and have it resolved. [Citation.] Unless there is some indication to the contrary, where no ruling has been made on a motion, we will presume that the motion was waived or abandoned"); *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 512-13, 748 N.E.2d 222, 227 (2001) ("Unless circumstances indicate otherwise, where no ruling appears to have been made on a motion, the presumption is that the motion was waived or abandoned"); *Majewski v. Von Bergan*, 266 Ill. App. 3d 140, 144, 638 N.E.2d 1189, 1192 (1994) ("It is the responsibility of the party filing a motion to request the trial judge to rule on it. [Citation.] Where no ruling appears to have been made on a motion, the presumption is that the motion was waived or abandoned").

Based on this record, the only conclusion that reasonably can be drawn is that plaintiff abandoned her motion for leave to file an amended complaint. If this court were to reverse (as the dissents suggests) on the basis that plaintiff's proposed amended complaint might be sufficient to state a cause of action, we would be doing so based upon an argument the trial court never heard. Over 15 years ago, in *In re Marriage of Harper*, 191 Ill. App. 3d 245, 246, 547 N.E.2d 574, 575 (1989), this court expressed our great reluctance to make such a ruling, and we are no less reluctant now. When a party has abandoned a motion by failing to ever call it to the trial court's attention for a ruling, we fail to see why we should address the motion for the first time on appeal.

## III. CONCLUSION

For the reasons stated, we dismiss the appeal from the trial court's dismissal of the counts against Goforth and affirm that court's dismissal of the counts against Alverez.

Appeal dismissed in part and affirmed in part.

TURNER, J., concurs.

JUSTICE APPLETON, concurring in part and dissenting in part:

I concur with that portion of the majority opinion dealing with defendant Goforth and agree that appeal must be dismissed as being taken from a nonfinal order.

I disagree with the majority as to defendant Alverez. Plaintiff's counsel filed a motion for leave to file a first-amended complaint with regard to defendant Alverez and noticed it for hearing at the same time as the motion to reconsider. The trial court never specifically ruled on this motion, despite the inclusion of the motion in the notice of hearing. The court *effectively* ruled on the motion, however, by dismissing the counts against Alverez "with prejudice." See *Gouge v. Central Illinois Public Service Co.*, 195 Ill. App. 3d 1026, 1029, 552 N.E.2d 1304, 1306 (1990), *rev'd on other grounds*, 144 Ill. 2d 535, 582 N.E.2d 108 (1991) ("the trial court dismissed plaintiffs' complaint with prejudice for failure to state a cause of action, *thereby* also denying plaintiffs' motion to amend their complaint" (emphasis added)). If, as the majority says, " 'with prejudice' meant that the court would not allow plaintiff to replead against Alverez" (358 Ill. App. 3d at 559), I do not see the logic in requiring plaintiff to ask again (the first time was in her notice of hearing) for a ruling on her motion to amend—only to have the court explain to her the meaning of "with

prejudice." I consider the notice itself, together with the ruling, sufficient to prevent application of the rule of abandonment announced by the majority.

We should remand this case with instructions to grant plaintiff's motion for leave to an amended complaint. Dismissing the counts against Alverez with prejudice, without specifically addressing the pending motion to amend, was an abuse of discretion and a miscarriage of justice. See *Cantrell v. Wendling*, 249 Ill. App. 3d 1093, 1096, 620 N.E.2d 9, 11 (1993). The proposed amended complaint could survive a challenge premised on sovereign immunity because sovereign immunity will not bar the lawsuit if the duty the employee breached arose from a source independent of the state employment. See *Jinkins*, 209 Ill. 2d at 330, 807 N.E.2d at 418; *Currie*, 148 Ill. 2d at 159, 592 N.E.2d at 980; *Janes*, 254 Ill. App. 3d at 960, 626 N.E.2d at 1133. In support of her motion to reconsider, plaintiff argued to the trial court that her original complaint sufficiently alleged professional negligence within the meaning of *Jinkins*, and, in the alternative, she requested leave to amend. In her filings below, she clearly made the relevant argument.

Citing *Jinkins*, 209 Ill. 2d at 331, 807 N.E.2d at 418, plaintiff argues that the duties Alvarez owed Exavier were "no different [from] the duties owed to a patient at a private mental health[ ]care facility. The relationship between *** Exavier *** and [defendants] as mental health[ ]care providers is no different [from] the relationship between private mental health[ ]care providers and their patients." In *Jinkins*, 209 Ill. 2d at 321, 807 N.E.2d at 412-13, the plaintiff, administratrix of George Jinkins's estate, sued two employees of a state mental-health facility for failing to properly diagnose and treat Jinkins's mental illness. Instead of certifying him as subject to involuntary commitment, they let him go home, where he committed suicide. *Jinkins*, 209 Ill. 2d at 321, 807 N.E.2d at 413. One defendant was a board-certified psychiatrist (*Jinkins*, 209 Ill. 2d at 324, 807 N.E.2d at 414), and the other was a licensed clinical professional counselor (*Jinkins*, 209 Ill. 2d at 325, 807 N.E.2d at 415). The defendants argued they would have owed no duty to Jinkins at all but for their state employment and, therefore, the source of their duty to Jinkins was their state employment.

The supreme court identified the *non sequitur* in that reasoning. The question was not whether the state employment provided the *occasion* for the defendants to incur a duty to Jinkins. The question was where the duty ultimately came from: the job or an independent source. Did the duty come from the job alone or from some set of standards outside the job? *Jinkins*, 209 Ill. 2d at 332-33, 807 N.E.2d at 419-20.

For three related reasons, the supreme court concluded that the defendants' duty in *Jinkins* came from a source independent of their state employment. First, they made a clinical decision that Jinkins did not qualify for involuntary commitment, and the standards for such a decision came not from their state employment but from their profession. *Jinkins*, 209 Ill. 2d at 334-35, 807 N.E.2d at 420-21. Second, the standards for involuntary commitment of patients were the same at private hospitals as at state hospitals (leading to the inference that those standards—and the duty they defined—came from a source independent of state employment). *Jinkins*, 209 Ill. 2d at 335-36, 807 N.E.2d at 421. Third, "the duties inherent in the doctor-patient relationship emanate[d] from the standards imposed by the profession itself," not from "the physician's employment status." *Jinkins*, 209 Ill. 2d at 336, 807 N.E.2d at 421.

In the proposed amended complaint, plaintiff alleges that Alverez was a certified nursing assistant and that by failing to properly supervise Exavier, Alverez "failed to exercise that degree of skill and care that ordinarily well qualified and certified nursing assistants possess and exercise under similar circumstances in [the] locality or similar localities in which the *** treatment was rendered." That allegation suggests that the professional standards of a certified nurse's aide have something to say about proper supervision of patients.

On the one hand, in her proposed amended complaint, plaintiff refers to Alverez's violation of workplace rules, as if to suggest that the duty Alverez breached was defined by her job at the Center. On the other hand, plaintiff refers to the "degree of skill and care that ordinarily well qualified and certified nursing assistants possess" and Alverez's failure to exercise that skill and care. From that allegation, it would be reasonable to infer that certified nursing assistants have a set of professional standards external to their jobs and the duty that Alverez breached derived not merely from her job but also from that set of professional standards. See 77 Ill. Adm. Code § 390.680(b) (Conway Greene CD-ROM March 2002) (developmental disabilities aides must be registered on the nurse aide registry and must complete a developmental disabilities aide training program within 120 days after being hired); 77 Ill. Adm. Code § 395.310(f)(3) (Conway Greene CD-ROM March 2002) (required contents of developmental disabilities aide training program, including "[i]njury[-]prevention techniques").

I, therefore, dissent from the majority's decision to affirm that portion of the judgment ordering that the dismissal of the counts against Alverez be with prejudice. I would remand with directions to grant the motion for leave to file an amended complaint.