2023 IL App (2d) 230087-U
No. 2-23-0087
Order filed November 30, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-2551 |
| MAURICE THOMPSON, | ) ) ) | Honorable Victoria A. Rossetti, D. Christopher Lombardo, |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The defendant was not denied his right to proceed without counsel as he failed to make a clear and unequivocal request to proceed *pro se*.

¶ 2    Following a jury trial, the defendant was convicted of seven counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(b)(1.2) (West 2018)) and sentenced to natural life imprisonment.  On appeal, the defendant argues that his convictions should be reversed and that he is entitled to a new trial because the trial court committed plain error when it denied his request to represent himself at trial.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The defendant was charged by indictment with seven counts of predatory criminal sexual assault and five counts of aggravated criminal sexual abuse. Each charge alleged that, on October 27, 2018, the defendant, who was over 18 years of age, committed an act of sexual penetration or sexual conduct against one of three victims, all of whom were under 13 years of age.

¶ 5      On November 4, 2018, the defendant appeared in court for the first time and the public defender's office was appointed to represent him. Two attorneys from that office represented the defendant throughout the proceedings.

¶ 6      At a September 5, 2019, status hearing, defense counsel informed the trial court, and the defendant confirmed, that he wanted to proceed *pro se*. The trial court told the defendant that representing himself *pro se* would be like him removing his own appendix. The trial court then asked the defendant whether he still wanted to proceed *pro se*, and the defendant stated that he did not.

¶ 7      On November 18, 2019, the defendant sent a letter to the trial court stating that he wanted to represent himself. At a status hearing two days later, the defendant informed the trial court that he wanted to represent himself. The trial court asked the defendant if he was a trained attorney and if he had experience with jury instructions, cross-examination, or motions *in limine*. The defendant indicated that he could handle such matters and that he had finished two years of college. The trial court ultimately told the defendant that he had the right to represent himself and continued the case for the defendant to "think about [it]." Thereafter, the defendant filed several *pro se* motions. The defendant also wrote a letter to the trial court, complaining that the trial court had not honored his request to proceed *pro se*.

¶ 8    At the next hearing, defense counsel requested that the trial court resolve the issue of representation.  When questioned by the trial court, the defendant stated that he (the defendant) needed to appoint another attorney.  The trial court informed the defendant that it would not appoint different counsel.  The trial court admonished the defendant regarding the severe penalties he faced if convicted.  The defendant complained that defense counsel was not adopting his motions or interviewing all of his witnesses.  The trial court told the defendant that defense counsel would decide whether to adopt the defendant's motions and continued the case.

¶ 9    On January 6, 2020, the trial court received another letter from the defendant, in which the defendant stated that he had hired private counsel and was working on paying the retainer fee.  At a status hearing on the next day, defense counsel stated that the defendant was "low functioning" and that defense counsel was having trouble getting him to cooperate.  Defense counsel raised a *bona fide* doubt as to the defendant's fitness to stand trial.  The trial court found that a *bona fide* doubt existed and ordered that the defendant undergo a fitness evaluation.  Thereafter, Dr. Kimberly Loucks evaluated the defendant and concluded that he was fit to stand trial.  At a fitness hearing, the parties stipulated to Dr. Louck's qualifications and findings, and the trial court found the defendant fit to stand trial.

¶ 10    At hearings in January, February and May 2020, the defendant continued to report that he was still trying to retain private counsel.  At two hearings in the beginning of June 2020, defense counsel informed the trial court that the defendant was refusing to meet with them.  At the latter hearing, defense counsel noted that the defendant had filed a letter requesting to proceed *pro se* in November 2019, and suggested that the issue should be addressed.  The trial court asked the defendant what he wanted, and the defendant responded that he was still trying to hire private counsel.

¶ 11    On June 22, 2020, the defendant filed a five page document.  The first two pages was a handwritten letter to the trial court titled, "Black Lives Matter."  In the letter, the defendant suggested that the trial court was prejudiced and racist.  The defendant complained about the racial makeup of incarcerated people; that "some" public defenders were "presenting false evidence" to "incriminate" their clients; and that defendants were not given adequate opportunities to "prove [their] innocence."  The letter concluded: "Your [*sic*] not in custody nor my skin color, you can't tell me you know about were [*sic*] I come from.  You can lose your job for all I care and maybe be in cuffs you may know how it feels but don't [*sic*]."

¶ 12    The next three pages was a form document captioned, "Appearance *Pro Se*."  On the first page, it stated: "I, Maurice Jahmal Thompson Jr. enter my appearance in this case."  It also included a checked box indicating that the defendant demanded a jury trial.  The second page indicated that the form had been sent to the office of the executive inspector general and to the attorney disciplinary body.

¶ 13    The next hearing in the case was held on July 8, 2020.  Defense counsel indicated that the case was up for status on the defendant's efforts to hire private counsel.  The trial court asked defense counsel about the defendant's most recent filing.  Defense counsel indicated that he had seen the filing, but that the defendant was still refusing to meet with his appointed attorneys.  The trial court found that the defendant's most recent filing gave it "some concern as to his ability to think clearly, understand the proceedings against him, and also his ability to even assist an attorney in preparation of his case[.]"  The trial court found that a *bona fide* doubt existed as to the defendant's fitness and ordered another fitness evaluation.

¶ 14    Dr. Loucks evaluated the defendant a second time, and again concluded that he was fit to stand trial.  At an August 4, 2020, fitness hearing, the parties stipulated to Dr. Loucks'

qualifications and to the contents of the report. The trial court found the defendant fit to stand trial.

¶ 15    During the following year, the defendant filed numerous *pro se* motions, letters, and other documents raising claims of ineffective assistance of counsel and errors in the State's investigation of the case and pretrial proceedings. None of the documents mentioned the fact that the defendant had filed a *pro se* appearance or that he wanted to proceed *pro se*. On May 3, 2021, the trial court acknowledged the defendant's numerous *pro se* filings and told the defendant it would not consider them because the defendant was represented by counsel. At the hearings subsequent to the defendant's second finding of fitness, defense counsel never stated that the defendant was refusing to meet or talk with his appointed attorneys.

¶ 16    In September 2021, the defendant sent a letter to the trial court complaining about defense counsel. At a hearing the next month, defense counsel asked the trial court to review the defendant's letter to see if a *Krankel* inquiry was necessary. The trial court found that the letter did not make any specific claims of ineffective assistance and found that no further inquiry was required. The cause proceeded to a jury trial on November 14, 2022. On that same day, the State dismissed the counts charging the defendant with aggravated criminal sexual abuse.

¶ 17    Following trial, the jury found the defendant guilty of seven counts of predatory criminal sexual assault. After the trial court denied the defendant's motion for a new trial, the defendant filed a *pro se* motion alleging ineffective assistance of trial counsel. Following a *Krankel* inquiry, the trial court concluded that none of the defendant's allegations warranted the appointment of new counsel. After a sentencing hearing, the trial court imposed a mandatory sentence of natural life imprisonment. The defendant filed a timely notice of appeal.

¶ 18                                II. ANALYSIS

¶ 19    On appeal, the defendant's sole contention is that the trial court erred in denying his request to represent himself at trial.  The defendant acknowledges that the issue was forfeited because it was not raised in his posttrial motions (see *People v. Enoch*, 122 Ill. 2d 176, 189 (1988)), but invokes the plain-error doctrine as an exception to forfeiture (see *People v. Averett*, 237 Ill. 2d 1, 18 (2010)).  The plain-error doctrine allows reviewing courts to address forfeited errors when the evidence is close, regardless of the seriousness of the error, or when the error is serious, regardless of the closeness of the evidence.  *People v. Herron*, 215 Ill. 2d 167, 187 (2005).  This court has found that the erroneous denial of a defendant's request for self-representation constitutes a serious error that warrants plain-error review regardless of the closeness of the evidence.  *People v. Albea*, 2017 IL App (2d) 150598, ¶ 28.  "The first step in a plain error analysis is to determine whether error occurred."  *People v. McDonald*, 2016 IL 118882, ¶ 48.  Accordingly, we will address whether the trial court erred in denying the defendant's request to proceed *pro se*.

¶ 20    The sixth amendment (U.S. Const., amend. VI) guarantees a criminal defendant both the right to the assistance of counsel and the corresponding right to proceed without counsel.  *People v. Wright*, 2017 IL 119561, ¶ 39 (citing *Faretta v. California*, 422 U.S. 806, 832-34 (1975)).  Our supreme court has long recognized that the right to self-representation is "as basic and fundamental as [the] right to be represented by counsel.  (Internal quotation marks omitted.)"  *Id.*  A defendant may therefore waive his or her constitutional right to counsel as long as the waiver is "voluntary, knowing, and intelligent."  *Id.*

¶ 21    It is "well settled" that a waiver of counsel must be clear and unequivocal, not ambiguous.  *People v. Baez*, 241 Ill. 2d 44, 116 (2011).  A defendant waives his right to self-representation unless he articulately and unmistakably demands to proceed *pro se*.  *Id.*  The purposes of requiring that a defendant make an unequivocal request to waive counsel are to: "(1) prevent the defendant

from appealing the denial of his right to self-representation or the denial of his right to counsel, and (2) prevent the defendant from manipulating or abusing the system by going back and forth between his request for counsel and his wish to proceed *pro se*." *People v. Mayo*, 198 Ill. 2d 530, 538 (2002).

¶ 22    In determining whether a defendant's statement is clear and unequivocal, a court must determine, from the overall context of the proceedings, whether the defendant truly desires to represent himself and has definitively invoked his right of self-representation. *People v. Burton*, 184 Ill. 2d 1, 22 (1998). Even if a defendant indicates that he wants to proceed *pro se*, he may later abandon his request to proceed *pro se* and acquiesce to representation by counsel. *Id.* at 23. As such, in determining whether a defendant seeks to relinquish counsel, courts may look at the defendant's conduct following his request to represent himself. *Id.* at 23-24. "A defendant may forfeit self-representation by remaining silent at critical junctures of the proceedings." *Id.* at 24. Courts must "indulge in every reasonable presumption against waiver" of the right to counsel. *Brewer v. Williams*, 430 U.S. 387, 404 (1977); *Burton*, 184 Ill. 2d at 23.

¶ 23    We also note that it is the responsibility of the party filing a motion to bring it to the trial court's attention and have it resolved. *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 54. Where no ruling has been made on a motion, the presumption is that the motion was waived or abandoned. See *Jackson v. Alverez*, 358 Ill. App. 3d 555, 563 (2005) (collecting cases). A party cannot appeal an issue raised by motion where the motion was not ruled upon. See *People v. Hall*, 114 Ill. 2d 376, 414 (1986) ("Because the defendant did not obtain a ruling on the question, he cannot now complain that the court erred.").

¶ 24    Under the circumstances in the present case, the defendant was not erroneously denied his right to self-representation because the defendant's request to waive counsel was not clear and

unequivocal. The defendant argues that his request to proceed *pro se* as stated in his *pro se* appearance form filed on June 22, 2020, was a clear and unequivocal request. However, at the next hearing on July 8, 2020, the trial court did not address the appearance form and the defendant did not bring it to the trial court's attention or request that he be allowed to proceed *pro se*. Rather, the trial court found that the defendant's June 2020 filing, that included a *pro se* letter, raised a *bona fide* doubt of the defendant's fitness and ordered an evaluation. After the defendant was found to be fit, there were at least monthly status hearings where the defendant was represented by counsel. At those hearings, the parties addressed pretrial issues, motions, and a trial date. The case then proceeded to a jury trial in November 2022. At the pretrial hearings and during the jury trial, the defendant never raised the issue of the June 2020 filing or stated that he wanted to proceed *pro se*. Accordingly, as we must indulge in every reasonable presumption against waiver of counsel, we presume that the defendant abandoned any desire to proceed *pro se*. *People v. Owens*, 2018 IL App (3d) 150616, ¶ 13 (a request to waive counsel is not clear and unequivocal if the defendant later acquiesces to his counsel's representation or abandons his earlier request to proceed *pro se*); *Jackson*, 358 Ill. App. 3d at 563 (where a party fails to request a ruling on a motion, it is presumed that the motion was abandoned). The defendant also forfeited any request to proceed *pro se* by remaining silent for over two years during pretrial proceedings and during trial. See *Burton*, 184 Ill. 2d at 24.

¶ 25 Moreover, if a trial court finds that a *bona fide* doubt exists as to a defendant's fitness to stand trial, it is implicit that the defendant cannot knowingly and intelligently waive the right to counsel. *People v. Washington*, 2017 IL App (4th) 150054, ¶ 21. Under such circumstances, a trial court could not grant a request to proceed *pro se* until the defendant was found fit to stand trial. *Id.* Accordingly, at the July 2020 hearing, once the trial court found a *bona fide* doubt as to

the defendant's fitness, the trial court could not have granted a request to proceed *pro se*. After the defendant was found fit to stand trial, as noted, the defendant did not renew his request to proceed *pro se* in any hearings or *pro se* filings for the over two-year period before the commencement of trial.

¶ 26 The defendant points out that he had requested to proceed *pro se* in September and November 2019 and that this bolstered a conclusion that his June 2020 *pro se* filing was a clear and unambiguous request to proceed *pro se*. We disagree. While the defendant initially made requests to proceed *pro se* in September and November 2019, he ultimately abandoned those requests by first asking for alternate counsel to be appointed and then indicating that he was hiring private counsel. As noted above, after his June 2020 filing, the defendant was silent about any desire to proceed *pro se* for over two years prior to the commencement of his trial and during his trial. The defendant argues that because he continued filing *pro se* motions, this was evidence that he did not abandon his request to proceed *pro se*. However, the defendant did not request to proceed *pro se* in any of those filings. Further, the trial court informed the defendant that it would only consider his *pro se* filings if they were adopted and presented by defense counsel. Under these circumstances, the defendant's continued *pro se* filings did not amount to a clear and unequivocal request to proceed *pro se*.

¶ 27 In arguing that he was denied his right to proceed *pro se*, the defendant relies on *People v. Gray*, 2013 IL App (1st) 101064. In *Gray*, the defendant filed a *pro se* postconviction petition, a public defender was appointed to represent the defendant, and the State filed a motion to dismiss. *Id.* ¶¶ 8-9. Thereafter, the defendant filed several *pro se* amendments and supplements to the petition. *Id.* ¶¶ 8-13. Appointed counsel filed a Rule 651(c) certificate that stated he was unable to amend or supplement the claims raised by the defendant in the *pro se* filings. *Id.* ¶ 14. At the

next hearing, counsel advised the trial court that the defendant wanted to represent himself, and have counsel withdraw, so that the issues the defendant raised in his *pro se* filings would be considered by the trial court. *Id.* ¶ 15. Alternatively, counsel asserted that the trial court could consider the *pro se* amendments without counsel's withdrawal. *Id.* The trial court denied the latter request, stating that it never allowed dual representation. *Id.*

¶ 28 The State subsequently filed a motion to strike the defendant's *pro se* amendments and filings because he was represented by counsel and the defendant filed a *pro se* motion asking the court to either consider the claims in his *pro se* amendments with counsel or allow him to proceed *pro se*. *Id.* ¶¶ 16-17. At the next hearing, the trial court reiterated its disapproval of hybrid representation and counsel thus suggested that the defendant should be brought to court to assert his right to represent himself. *Id.* ¶ 18. The trial court stated that this suggestion was a dilatory tactic, struck the defendant's *pro se* filings, and granted the State's motion to dismiss. *Id.* ¶¶ 18-19. The defendant appealed.

¶ 29 On appeal, the *Gray* court held that the defendant's request to represent himself was clear and unambiguous and that the trial court had "abused its discretion by failing to grant, or even expressly rule upon, [the] defendant's request to proceed *pro se*." *Id.* ¶ 24. The reviewing court further held that the defendant's request to represent himself was not a dilatory tactic because it arose shortly after his counsel refused to make or endorse the *pro se* amendments to the petition and the trial court refused to consider the amendments. *Id.* ¶ 25. The *Gray* court thus vacated the dismissal of the defendant's petition and remanded the matter for further proceedings for the trial court to determine whether the defendant knowingly and intelligently relinquished his right to counsel. *Id.* ¶ 27.

¶ 30    The defendant's reliance on *Gray* is unpersuasive. In *Gray*, the defendant's request to proceed *pro se* was clear and unambiguous. On two occasions, at hearings before the trial court, defense counsel made it clear that Gray wanted his *pro se* amendments and filings to be considered and that he was willing to represent himself *pro se* if necessary. *Id.* ¶¶ 15, 18. Gray also filed a *pro se* motion asking the trial court to consider his *pro se* amendments and clearly stating that, if necessary to reach that result, he would proceed *pro se*. *Id.* ¶ 17. Thus, Gray's request to proceed *pro se* was raised at multiple hearings before the trial court. In this case, the defendant never informed the trial court that he had filed a *pro se* appearance form, never brought the filing to the trial court's attention when it was not mentioned, and after his second fitness hearing never reiterated a request to proceed *pro se* for over two years during pretrial and trial proceedings. Also following the second finding of fitness, defense counsel never expressed that the defendant was not cooperating with them. Thus, unlike *Gray*, the defendant's request to proceed *pro se* following his June 2020 filing was never raised in any hearings before the trial court. Accordingly, as the defendant never made a clear and unequivocal request to proceed *pro se*, there was no error and thus no plain error.

¶ 31                                III. CONCLUSION

¶ 32    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 33    Affirmed.