**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230399-U

Order filed September 26, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| LESLIE GRAY ROBBINS, | ) | Du Page County, Illinois, |
| | ) | |
| Petitioner-Appellee and | ) | |
| Cross-Appellant, | ) | Appeal No. 3-23-0399 |
| | ) | Circuit No. 21-D-1121 |
| and | ) | |
| | ) | |
| EDWARD WEST ROBBINS, | ) | |
| | ) | Honorable |
| Respondent-Appellant and | ) | Maureen R. Riordan, |
| Cross-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Holdridge and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The trial court's finding that the funds in an income retirement account were marital property was against the manifest weight of the evidence. The trial court erred in holding that the wife failed to present a *prima facie* case for dissipation. Reversed and remanded with directions and for further proceedings.

¶ 2     Respondent, Edward West Robbins, appeals from the trial court's ruling that an income retirement account was marital property. Petitioner, Leslie Gray Robbins, cross-appeals from the

trial court's ruling denying her dissipation claim. For the following reasons, we reverse as to those challenged portions of the trial court's dissolution judgment and order denying reconsideration and remand the cause with directions and for further proceedings consistent with this decision.

¶ 3                                    I. BACKGROUND

¶ 4        Leslie and Edward were married on June 3, 2006, and have two minor children. On June 16, 2021, Leslie filed a petition for dissolution of marriage. The parties entered into an agreed allocation of parental responsibilities and an equal parenting time schedule, and that agreement is not at issue on appeal.

¶ 5                                 A. Pretrial Proceedings

¶ 6        Extensive pretrial litigation ensued on issues pertaining to the marital estate, including Leslie's dissipation claim. Namely, on April 6, 2022, Leslie filed a petition for a temporary restraining order and preliminary injunction, requesting that Edward be enjoined from unilaterally accessing the parties' marital assets. Leslie asserted that, between October 19, 2021, and January 18, 2022, Edward liquidated and transferred a total of $76,000 from the parties' marital brokerage account into his personal bank account—$29,000 on October 19, 2021; $25,000 on November 17, 2021; and $22,000 on January 18, 2022. Edward filed a motion to strike and dismiss the petition, arguing, *inter alia*, that Leslie failed to plead the requisite irreparable harm, as there were no allegations that Edward in fact dissipated the subject funds, the marital estate was worth approximately $1.5 million, and Edward owns a business and earns a steady income from that business. On June 10, 2022, following a hearing, the trial court granted Edward's motion but allowed Leslie leave to refile.

¶ 7        Thereafter, on November 30, 2022, Leslie filed a notice of intent to claim dissipation at trial, in accordance with the statutory requirements set forth in section 503(d)(2) of the Illinois Marriage and Dissolution of Marriage Act (Act). 750 ILCS 5/503(d)(2) (West 2022). Leslie asserted that Edward made additional withdrawals from the marital brokerage account, depleting the account's balance from $158,000 to zero during a 15-month time period. Edward filed a response, arguing that Leslie failed to establish that Edward used the funds for a nonmarital purpose and thus failed to establish a *prima facie* case for dissipation and that he withdrew the funds and transferred them into his checking account to pay "marital, family expenses."

¶ 8                                    B. Trial

¶ 9        Trial on the various disputed issues occurred over a period of five days in February 2023. Witnesses included both parties and Edward's mother. In addition, Leslie called an expert witness on the issue of Edward's income, and both parties called expert witnesses regarding the valuation of Edward's business. We recount the evidence as it pertains to the issues on appeal— the allocation of a Roth income retirement account (IRA) and the dissipation claim.

¶ 10       With respect to the Roth IRA, Edward testified that, in 2002 (four years before his marriage to Leslie), he converted a traditional IRA into the Roth IRA at issue here. Edward identified a 2002, IRA conversion form showing that he converted a traditional IRA into Roth IRA x2523, and a March 2003 statement for Roth IRA x2523. The next account statement Edward identified for the Roth IRA was a March 31, 2007, statement with a different account number—namely Roth IRA x5294. Edward testified, over Leslie's counsel's objection for lack of foundation and that it called for a conclusion, that the accounts were one and the same Roth IRA, although he acknowledged that he did not have a document evidencing this. The March 31, 2007, statement contained a graph showing the monthly value of the account for the prior 12

months and in the "Retirement Activity Summary," stated that no contributions were made in 2006 (the year in which Edward and Leslie were married) or to date in 2007. Edward further testified that he made no contributions to the Roth IRA during that time. The March 31, 2007, statement further reflected that the value of the Roth IRA was $80,000 as of May 2006, which was just prior to the parties' June 3, 2006, wedding.

¶ 11     For the years 2007 through 2012, Edward provided no account statements for the Roth IRA but testified that he did not make any contributions to the Roth IRA in those years. The parties' joint federal tax returns for 2007 to 2013 and an attached "IRA Information Worksheet" for each year were introduced into evidence. While Leslie's counsel objected to admission of the worksheets for lack of foundation because the worksheets are neither signed nor filed, the trial court overruled the objection and admitted the worksheets along with the tax returns, which were self-prepared by Edward. The IRA Information Worksheet is a three-page form, stating at the top "Keep for your records," and setting forth, *inter alia*, sections to record the "Basis (Contribution and Conversion History)," "Excess Contributions," and "Contributions" for a Roth IRA. Edward testified that, as reflected on the 2007 to 2013 worksheets, he made no contributions to his Roth IRA during those years and that the basis in the Roth IRA remained precisely the same from 2006 to 2013. Moreover, Edward testified that he could not have contributed to a Roth IRA in any of those years because his adjusted gross income, as reflected on the tax returns, was above the maximum level allowed for Roth IRA contributions. Leslie's counsel had objected to the testimony, arguing that it assumes facts not in evidence and calls for a conclusion and an opinion as to the IRS limits—an opinion for which, counsel argued, Edward was not qualified to testify. However, the trial court overruled the objection, stating, "If he knows, overruled. You can answer."

¶ 12    Edward did provide account statements for Roth IRA account x5294 for the years 2013 through 2022, reflecting that no contributions were made to the account during that time. Edward likewise testified that he made no contributions to the Roth IRA for those years. The final statement introduced (December 2022) reflected an ending account value of $487,424.

¶ 13    With respect to the dissipation claim, Edward testified regarding his withdrawals and depletion of the $158,000 from the brokerage account during the 15-month time frame. Edward did not dispute the withdrawals, confirmed that he was the sole authorized signatory on the brokerage account, and acknowledged that he transferred the funds into his sole checking account. Edward testified that his annual income was $50,000 at the time and that he needed the funds to pay household and child-related expenses. Edward further testified that he paid his personal credit cards from his checking account, including paying credit card bills in the amount of $18,810 in October 2021. Edward acknowledged that the credit card bills included charges for his attorney fees. Edward also acknowledged that, with the exception of a $20,000 payment to Leslie's expert witness, none of the withdrawn funds were given to Leslie, who had moved out of the marital home in March 2022. Leslie introduced text messages and e-mails between the parties reflecting Leslie's objections to Edward's use of the funds.

¶ 14    At the conclusion of Leslie's case-in-chief, Edward's counsel orally moved for a directed finding on Leslie's dissipation claim on the ground that Leslie failed to provide any evidence that the funds were used for a nonmarital purpose. The trial court granted the motion, reasoning that, to shift the burden of proof regarding dissipation, there must first be a preliminary showing of dissipation and finding that Leslie failed to establish a *prima facie* showing of dissipation. The trial reasoned,

"I've again gone through the testimony that we've taken; the testimony from [Edward] regarding his spending, I'll say where his funds were used for legal fees, mortgage payments, children's camps, et cetera, et cetera; the testimony from [Leslie] this morning was that she was aware that these amounts were being removed from the retirement accounts in order to pay for the mortgage, the living expenses. According to [Edward's] response, she also got a $20,000 advance from those funds. Respectfully, I don't find that there's been any evidence or testimony that these funds were used for a nonmarital purpose, and therefore, the motion for a directed finding is going to be granted."

However, the trial court subsequently granted in part Leslie's counsel's oral motion for reconsideration, citing Edward's testimony that he used some of the funds for his attorney fees and reasoning that use of marital funds for attorney fees may amount to dissipation.

¶ 15                              C. Dissolution Judgment

¶ 16        Following the close of evidence, the trial court took the matter under advisement and thereafter issued its dissolution judgment on April 5, 2023. We recount those portions of the dissolution judgment relevant to the issues on appeal and outline the overall distribution of the marital estate as context for the parties' arguments on appeal. The trial court set forth its findings with respect to the value of the parties' marital estate and then found a 55/45 division to be equitable, with Leslie receiving 55% and Edward receiving 45%. This included an award of $225,000 to Leslie for her interest in the marital residence and a net award of approximately $12,000 for her interest in Edward's business (valued at $104,400) after deducting her 45% share of Edward's father's loan to the business. Regarding the parties' debt, which the trial court found to be substantial, the trial court ordered each party to pay the credit card debt in their own name,

with Leslie's estimated to be between $24,910 and $32,921 and Edward's estimated to be $29,506. The trial court also ordered Edward to pay Leslie monthly child support in the amount of $200—an upward deviation from the statutory guidelines based upon the parties' relative incomes (Edward: $100,000 in imputed income for 2022; Leslie: $65,941 in gross income for 2022); ordered Edward to pay 60% and Leslie 40% of child-related expenses; and barred Edward from receiving maintenance from Leslie but reserved for three years the issue of potential maintenance from Edward to Leslie.

¶ 17    The dissolution judgment included a section titled "Non-Marital Property," in which the trial court found that certain mineral rights were Leslie's nonmarital property and, following extensive findings on the issue, that a Charles Schwab investment account containing approximately $1 million that Edward received in July 2022 upon the death of his father (as a remainder beneficiary of a trust that had been created by Edward's grandfather) was Edward's nonmarital property. The trial court then concluded that "the remaining claims for non-marital property [which included the Roth IRA claim] were not traced by clear and convincing evidence" and ordered all marital retirement accounts to be divided on a 55/45 basis as of March 31, 2023, with Leslie receiving 55% of the account and Edward receiving 45% of the account.

¶ 18    Regarding the dissipation claim, the trial court noted that it had granted an oral motion for a directed finding pursuant to section 2-1110 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1110 (West 2022) ("Motion in non-jury case to find for defendant at close of plaintiff's evidence")), finding that Leslie had not made a *prima facie* showing of dissipation but thereafter reconsidered its ruling and reinstated the dissipation claim only as it pertained to attorney fees. However, noting that it nonetheless maintained the discretion as to whether to award dissipated funds, the trial court declined to order Edward to reimburse Leslie for his use of the funds to pay

7

attorney fees. In doing so, the trial court reasoned, "This case was heavily litigated, and the Court notes both parties incurred substantial legal fees." Accordingly, the trial court denied the dissipation claim.

¶ 19                                    D. Posttrial Proceedings

¶ 20        Both parties filed motions to reconsider the dissolution judgment. Leslie moved for reconsideration of the trial court's finding that the Charles Schwab investment account was nonmarital property, and Edward moved for reconsideration of the trial court's finding that the Roth IRA was marital property. Edward asserted that the undisputed evidence demonstrated that his Roth IRA was acquired and funded prior to the marriage and that he did not contribute any additional funds to the Roth IRA during the marriage. Thus, Edward argued that he traced the source of the funds by clear and convincing evidence.

¶ 21        Following briefing and argument, on August 2, 2023, the trial court denied both motions to reconsider. As for the Charles Schwab investment account, the trial court reviewed the evidence and reiterated that Edward proved by clear and convincing evidence that the account was his nonmarital property. Regarding the Roth IRA, the trial court reasoned that, while Edward testified that "it was the same account as the 2003 IRA and the account numbers were different," and "2006 was, at least, referenced on that initial graph that the account was, in fact, open in 2006," there was nonetheless a "gap in time from 2007 to 2012 where we have no account statements." The trial court further reasoned, "[W]hile I do appreciate that there are the IRS information worksheets that are attached to the tax returns, those worksheets do specifically state at the top that they are for taxpayer records only. Those are not filed and, respectfully, I do not find that they meet the high burden of clear and convincing evidence to show that this was [Edward's] nonmarital property; so, respectfully, the motion to reconsider is going to be denied."

8

¶ 22    Edward timely filed a notice of appeal from the dissolution judgment and the order denying reconsideration. Leslie thereafter timely filed a notice of cross-appeal from the dissolution judgment and the order denying reconsideration.

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, Edward seeks reversal of the trial court's finding that the Roth IRA was marital property. He argues that he met his burden of tracing the source of the funds in the account by clear and convincing evidence. Alternatively, Edward argues that the trial court should have minimally reimbursed his nonmarital estate for the $80,000 value of the Roth IRA before the parties' marriage. Leslie counters that the trial court's finding that Edward failed to adequately trace the source of the funds in the Roth IRA was not against the manifest weight of the evidence because Edward failed to adequately document the source of the funds. Leslie also argues that Edward forfeited his alternative claim that his nonmarital estate should be reimbursed $80,000 by failing to raise the issue in the trial court.

¶ 25    On cross-appeal, Leslie seeks reversal of the trial court's denial of her dissipation claim. She argues that the trial court erred in holding that she failed to establish a *prima facie* case for the entirety of her dissipation claim and also challenges the trial court's denial of the claim as to attorney fees. Edward responds that Leslie failed to meet her initial burden of showing that dissipation occurred and that the trial court acted well within its discretion in denying the dissipation claim as to attorney fees.

¶ 26    We address each issue in turn.

¶ 27                                    A. Roth IRA

¶ 28    In distributing a marital estate, the trial court must first determine what constitutes marital property and what constitutes nonmarital property. *In re Marriage of Dhillon*, 2014 IL App (3d)

9

130653, ¶ 30. A trial court's classification of property will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A trial court's finding is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent from the record or if the finding is arbitrary, unreasonable, or not based on the evidence. *Id.*

¶ 29    Whether property is classified as marital or nonmarital is governed by section 503 of the Act (750 ILCS 5/503 (West 2020)). Marital property means all property, including debts and other obligations, acquired by either spouse subsequent to the marriage. *Id.* § 503(a). Section 503(a) sets forth exceptions known as nonmarital property. *Id.* Among the exceptions are "property acquired before the marriage, except as it relates to retirement plans that may have marital and non-marital characteristics." *Id.* § 503(a)(6); *In re Marriage of Budorick*, 2020 IL App (1st) 190994, ¶ 40.

¶ 30    Retirement plans are further addressed in section 503(b)(2) of the Act, which provides that individual retirement accounts acquired by or participated in by either spouse after the marriage and before a dissolution judgment are presumed to be marital property but that the presumption may be overcome by showing through clear and convincing evidence that the property was acquired by a method listed in section 503(a). 750 ILCS 5/503(b)(2) (West 2020); *Marriage of Budorick*, 2020 IL App (1st) 190994, ¶ 41. The party claiming the property is nonmarital bears the burden of rebutting the presumption. *Marriage of Budorick*, 2020 IL App (1st) 190994, ¶ 41. Any doubts as to the classification of the property will be resolved in favor of finding the property to be marital property. *Id.*

¶ 31    Edward posits that the Roth IRA was nonmarital property under the Act because he funded it before the marriage and he made no contributions to the account during the marriage. A party claiming that a retirement account is nonmarital may meet its burden of overcoming the

10

presumption of marital property by tracing, through clear and convincing evidence, that the property was acquired before the marriage. See *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 52. " 'Tracing of funds is a procedure which allows the court to find that property which would otherwise fall within the definition of marital property is actually nonmarital property under one of the statutory exceptions.' " *Id.* (quoting *In re Marriage of Jelinek,* 244 Ill. App. 3d 496, 504 (1993)). Tracing requires that the source of the funds be identified by clear and convincing evidence. *Id.* ¶¶ 52-55. Clear and convincing evidence is that "quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the truth of the proposition in question." *Bazydlo v. Volant*, 164 Ill. 2d 207, 213 (1995).

¶ 32    Edward challenges the trial court's finding that he did not trace the funds in his Roth IRA by clear and convincing evidence. He argues that the documentary evidence and his uncontroverted testimony established that the Roth IRA predated the parties' marriage and that he made no contributions to the account during the marriage. Edward cites the March 2002 IRA conversion form showing that, several years before the parties' marriage, he converted a traditional IRA into Roth IRA x2523, the March 2003 statement for Roth IRA x2523, and the March 2007 account statement for the Roth IRA ending in x5294. Leslie points to the obvious discrepancy in the account numbers, while Edward cites his unrefuted testimony that the accounts were one and the same, albeit acknowledging the lack of supporting documentation for his assertion that the account numbers changed at some point between 2003 and 2005. Further, the March 31, 2007, statement listed balances for Roth IRA x5294 dating back to March 2006— several months before the parties' June 2006 wedding—thereby establishing that the Roth IRA existed before the parties' marriage. Indeed, the trial court recognized as much in noting that "2006 was, at least, referenced on that initial graph that the account was, in fact, open in 2006."

11

¶ 33         As for contributions, while Edward introduced account statements for the most recent years, 2013 through 2022, showing that he made no contributions to the Roth IRA, he did not introduce account statements for the years 2007 to 2012. The trial court focused on the years without account statements in finding that the Roth IRA was marital property, reasoning that the IRA Information Worksheets are for taxpayer records only and not filed and therefore, "I do not find that *they* [the worksheets] meet the high burden of clear and convincing evidence to show that this was [Edward's] nonmarital property." (Emphasis added.) However, this finding disregards Edward's uncontradicted testimony. In addition to the worksheets, Edward testified unequivocally that he did not make any contributions to the Roth IRA for the years without account statements or any other year during the marriage. "[A] party's testimony may be sufficient to trace whether marital funds were contributed to nonmarital property." *Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 55 (citing *In re Marriage of Henke,* 313 Ill. App. 3d 159, 174 (2000) (the wife's testimony was sufficient to trace the contributions of the marital estate to the nonmarital property by clear and convincing evidence)). While uncontradicted testimony, if inherently unreasonable or improbable, need not be believed (see *Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 55), here, the trial court made no credibility findings with respect to Edward's testimony, and there is nothing in the record to suggest his testimony was incredible. Indeed, in addition to his uncontradicted testimony, Edward introduced into evidence the parties' joint federal tax returns for 2007 to 2013 as well as the attached IRA Information Worksheets for each year reflecting that he did not make any contributions to the Roth IRA in those years and that the basis in the Roth IRA remained precisely the same. Moreover, Edward testified that he could not have contributed to a Roth IRA in any of those years because his adjusted gross

12

income, as reflected on the tax returns, was above the maximum level allowed for Roth IRA contributions.

¶ 34        Accordingly, this case is simply unlike the cases upon which Leslie relies, where the trial court's classification of a financial account was held to be against the manifest weight of the evidence given the spouse's uncorroborated or incredible testimony and absence of documentary evidence. See *Marriage of Budorick*, 2020 IL App (1st) 190994, ¶ 47 (the wife's uncorroborated, "perfunctory, affirmative response to a leading question by her counsel as to the nonmarital source of the funds" in a retirement plan did not amount to clear and convincing evidence sufficient to overcome the presumption of marital property); *Marriage of Dhillon*, 2014 IL App (3d) 130653, ¶ 32 (the husband's testimony, "which the trial court found to be completely lacking in credibility," was insufficient to meet his burden of tracing the funds in a savings account by clear and convincing evidence). Here, given the documentary evidence presented at trial, as well as Edward's uncontroverted testimony regarding the tax returns and worksheets and that he did not contribute to the Roth IRA during the marriage, the trial court's finding that Edward failed to trace the funds was against the manifest weight of the evidence.

¶ 35        We therefore reverse the trial court's finding that the Roth IRA was marital property subject to allocation and remand the matter to the trial court for entry of an order awarding the Roth IRA to Edward as his nonmarital property. In light of our holding, we need not address Edward's alternative argument that the trial court should have minimally reimbursed his nonmarital estate for the $80,000 value of the Roth IRA before the parties' marriage.

¶ 36                                    B. Dissipation

¶ 37        When dividing marital property, the trial court is required to consider all relevant factors, including those listed in section 503(d) of the Act. 750 ILCS 5/503(d) (West 2020). Among the

13

enumerated factors are "the dissipation by each party of the marital or non-marital property." *Id.* § 503(d)(2); *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 86. Dissipation is the use of marital assets for the sole benefit of one spouse for purposes unrelated to the marriage while the marriage is undergoing an irreconcilable breakdown. *In re Marriage of O'Neill,* 138 Ill. 2d 487, 497 (1990). The party alleging dissipation must first make a *prima facie* showing that dissipation has occurred. *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶ 78. Once this showing has been made, the burden shifts to the party charged with dissipation to show with clear and specific evidence how the funds were spent. *Id.*

¶ 38        Whether a party's conduct constitutes dissipation depends on the facts and circumstances of the particular case. *Id.* The trial court's factual findings concerning dissipation will not be reversed on appeal unless they are against the manifest weight of the evidence, and the court's final distribution of property is reviewed for an abuse of discretion. *In re Marriage of Vancura*, 356 Ill. App. 3d 200, 204-05 (2005). Here, the procedural context is such that we are also reviewing the trial court's grant of Edward's motion for a directed finding as to the entirety of the dissipation claim pursuant to section 2-1110 of the Code on the basis that Leslie failed to present a *prima facie* case as to all but the attorney fee portion of the dissipation claim. The parties agree that the standard of review for this issue is *de novo*. See *Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 100 (in ruling on a motion for a directed finding, if the trial court finds that the plaintiff has failed to establish a *prima facie* case as a matter of law, the standard of review on appeal is *de novo*). We begin with this issue.

¶ 39        Leslie argues that she established a *prima facie* case of dissipation due to the undisputed evidence that Edward, within a 15-month time span after she filed her dissolution petition, depleted the entire $158,000 in their marital brokerage account. She also points out that Edward

14

was the only signatory on the account and transferred the money to his personal checking account over Leslie's objection. We agree that that this evidence met Leslie's burden of making a preliminary, *prima facie* showing at to the entirety of her dissipation claim. In squarely addressing the question of what a spouse needs to show to make a *prima facie* showing of dissipation, the court in *Marriage of Hamilton* noted that, "in many cases, the *prima facie* evidence of dissipation consists of large withdrawals of cash from the parties' bank accounts." *Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶ 80 (citing, *inter alia*, *Marriage of Dhillon*, 2014 IL App (3d) 130653, ¶¶ 9, 11 (the spouse essentially depleted the marital funds in a savings account by making a few large transfers over a short period of time); *Vancura*, 356 Ill. App. 3d at 203 (the spouse cashed a $ 16,000 check made out to a family business without the wife's knowledge); *Henke*, 313 Ill. App. 3d at 177 (the spouse took an IRA distribution of $33,669)). Moreover, a large withdrawal is just one way to make a *prima facie* showing of dissipation. *Id.* A *prima facie* showing of dissipation may also be established by showing that funds withdrawn or spent by a spouse over a period of months or years added up to a substantial amount. *Id.* ¶¶ 82-84 (collecting cases).

¶ 40        Here, Edward did not dispute that the amount of $158,000 taken from the parties' brokerage account was substantial, and the record supports Leslie's characterization of the amount as substantial when considered in the context of the entirety of the marital estate. The account was depleted within a 15-month time period, including $76,000 between October 2021 and January 2022. Accordingly, given the evidence presented, the trial court erred in holding that Leslie failed to establish a *prima facie* case of dissipation. See *id.* The trial court reasoned that Leslie did not present evidence that the funds were used for a nonmarital purpose (other than for attorney fees) and granted Edward's motion for a directed finding on this basis. But this confuses

15

Leslie's burden to make a *prima facie* case with Edward's ultimate burden to show how the funds were spent. Leslie did not bear the initial burden on the latter issue. See *id.* ¶ 80 ("It is clear that the party claiming dissipation is not required to demonstrate that the funds at issue were used for a purpose unrelated to the marriage."). Rather, she bore the initial burden of making a *prima facie* showing of dissipation, which she did by evidencing Edward's depletion of the brokerage account, so as to shift the burden to Edward to demonstrate with clear and specific evidence how the funds were spent. See *id.* ¶¶ 78, 80. Accordingly, we reverse the trial court's grant of Edward's motion for a directed finding on the dissipation claim and remand for consideration of the dissipation claim.

¶ 41        In this regard, we note that there did not appear to be any dispute that $20,000 of the challenged funds were given to Leslie for her legal expenses. Also, while the trial court found that Edward's use of the funds to pay an unidentified amount in attorney fees amounted to dissipation (see *In re Marriage of Berberet*, 2012 IL App (4th) 110749, ¶ 58 ("The use of marital assets to pay fees to one's attorney for the costs of the divorce constitutes dissipation of marital assets.")), it nonetheless declined to order Edward to reimburse Leslie, reasoning that the case was heavily litigated and both sides incurred substantial legal fees. "Even where dissipation is established, the circuit court 'is not *required* to charge against a party the amounts found to have been dissipated but *may* do so.' " (Emphases in original.) *Id.* ¶ 51 (quoting *In re Marriage of Murphy*, 259 Ill. App. 3d 336, 340 (1994)). Here, the trial court's directed finding on the dissipation claim precluded it from considering the entirety of Leslie's dissipation claim which should be reconsidered in its entirety on remand. Accordingly, upon remand, the trial court shall consider the dissipation claim in its entirety in resolving the claim and any impact on the division of marital property.

16

¶ 42                              III. CONCLUSION

¶ 43        For the reasons stated, we reverse the judgment of the circuit court of Du Page County

and remand the cause with directions and for further proceedings consistent with this decision.

¶ 44        Reversed and remanded.